# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON GRISBY, | : | |
|     Plaintiff | : | |
| | : | No. 1:17-cv-00243 |
| v. | : | |
| | : | (Judge Rambo) |
| C.O. 1 MCBETH, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is a motion to dismiss the 42 U.S.C. § 1983 complaint (Doc. No. 1) of Plaintiff Jason Grisby ("Grisby"), or, in the alternative, for summary judgment, filed by Defendant C.O. McBeth ("McBeth"), from the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"). (Doc. No. 16.) Grisby contends that McBeth violated his First Amendment right by issuing him retaliatory charges of misconduct. (Doc. No. 1.) For the reasons set forth below, the motion for summary judgment will be granted.

## I. BACKGROUND

Grisby was incarcerated at SCI-Camp Hill from May 28, 2014 to June 2015. (Doc. No. 1.) Grisby alleges that while housed in the Special Management Unit ("SMU"), he was retaliated by McBeth because of Grisby's complaints stemming from food missing from his meal tray. (Id. at 2.) Specifically, Grisby contends that on March 2, 2015, he received his meal tray with food missing and complained to McBeth. (Id.) Grisby alleges that as a result of his complaint,

1

McBeth issued him a falsified disciplinary misconduct report for refusing to obey an order. (Id., Doc. No. 17, Ex. A. Decl. Dupont ¶¶ 12, 13, Grisby issued Misconduct B479893 which was dismissed without prejudice). As a result of the misconduct, Grisby contends that he was placed on a food restriction as well as a movement restriction. (Id. at 3.)

On March 4, 2015, Grisby maintains that a disciplinary hearing was conducted which resulted in a dismissal of the misconduct. (Doc. No. 1 at 3, Doc. No. 17, Ex. A Decl. Dupont ¶ 13, misconduct dismissed without prejudice). Grisby alleges that as a result of the dismissal of the misconduct, McBeth again issued him a false misconduct for refusing to obey an order. (Doc. No. 1 at 3, Doc. No. 17, Ex. A Decl. Dupont ¶ 14, Grisby issued Misconduct B479896). Grisby was found guilty by a hearing examiner of refusing to obey an order as set forth in the second misconduct and sentenced to sixty (60) days disciplinary custody solitary confinement. (Doc. No. 1 at 3, Doc. No. 17, Ex. A Decl. Dupont ¶ 15). Grisby appealed Misconduct B479896 to the Superintendent who upheld the hearing examiner's decision. (Doc. No. 17, Ex. A Decl. Dupont ¶ 15). Grisby did not appeal the misconduct to the Chief Hearing Examiner. (Id.)

On March 16, 2015, Grisby filed a grievance concerning a problem with staff officer Dempsey (not a named defendant) for mishandling his outgoing mail. (Id. Ex. B Decl. Alvord ¶ 20). The grievance was assigned number 556993 and

2

was denied by the Facility Grievance Coordinator. (Id.) Grisby appealed the initial response to the Facility Manager, and the denial was upheld. (Id.) Grisby did not appeal further to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id.) Grisby was transferred out of SCI-Camp Hill to another facility on June 23, 2015. (Id. ¶ 21.) Between March 2, 2015 and his transfer out of SCI-Camp Hill, Grisby had filed two additional grievances regarding mail and food, but failed to appeal either of these grievances to SOIGA. (Id. ¶ 22.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss Standard

McBeth has filed a motion which, in part, seeks dismissal of the complaint on the grounds that Grisby's complaint fails to state a claim upon which relief may be granted, as provided by Rule 12(b) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b) because it is accompanied by evidentiary documents outside the pleadings contravening Grisby's claims. Rule 12 provides, in pertinent part, as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Court will not exclude the evidentiary materials accompanying McBeth's motion to dismiss because Grisby also has been given a reasonable opportunity to present material relevant to the motion. Thus, McBeth's motion to dismiss, or, in the alternative, for summary judgment, will be treated solely as seeking summary judgment.

> B. **Motion for Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION

### A. Grisby's Misconduct Exhaustion of Administrative Remedies

Under the Prisoner Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997(e); Woodford v. Ngo, 548 U.S. 81 (2006). Exhaustion must be done properly, meaning an inmate must follow procedural rules, including deadlines, so the merits of the grievance are considered. See Woodford, 548 U.S. at 90; see also Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90.

In order to properly exhaust, the prisoner must complete the administrative review process in accordance with the procedural rules governing the prison grievance system. Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88) (citation omitted); see also Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "Substantial compliance" with the statutory exhaustion requirement is

insufficient.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Moreover, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).  Failure to exhaust is an affirmative defense that must be pled by the defendant.  Jones v. Bock, 549 U.S. 199, 216 (2007).

The Pennsylvania Department of Corrections ("DOC") has a three-tiered system to appeal misconducts (pursuant to DC-ADM 801), which serves as an inmate's administrative remedy to appeal misconducts.  The misconduct appeal system consists of: (1) an appeal from the Hearing Examiner to the Program Review Committee ("PRC"); (2) an appeal to the Facility Manager; and (3) an appeal to the Chief Hearing Examiner's Office, Office of Chief Counsel.  Failure to appeal a finding of misconduct to final review constitutes a failure to exhaust administrative remedies regarding that misconduct.  Hagan v. Chambers, Civ. No. 08-1766, 2010 WL 4812973, at *6, *18 (M.D. Pa. Nov. 19, 2010).

McBeth contends that the Grisby's misconduct file discloses that he has failed to exhaust any claims stemming from his misconducts that are at issue in this action.  (Doc. No. 17.)  Specifically, Grisby was issued two misconducts in March 2015: Misconduct B479893, issued on March 2, 2015, and Misconduct B479896, issued on March 4, 2015.  (Id. Ex. A Decl. Dupont ¶¶ 12-14.)  Misconduct

B479893 was dismissed without prejudice and Grisby was not subject to any disciplinary custody as a result of the dismissal of this misconduct.[1]

Misconduct B479896 was issued to Grisby on March 4, 2015, also for refusing to obey an order. (Id. ¶14.) Following a hearing, Grisby was found guilty and given sixty (60) days of disciplinary custody. (Id. ¶ 15.) Grisby appealed to the PRC, which upheld the Hearing Examiner's decision. (Id.) Grisby appealed the decision to the Superintendent who upheld the Hearing Examiner's decision. (Id.) Grisby, however, did not appeal this misconduct to the Chief Hearing Examiner. (Id.)

Consequently, because the undisputed record reflects that Grisby has failed to properly exhaust his administrative remedies regarding the misconducts, and

---

[1] While Grisby concedes that he was not subjected to any disciplinary custody as a result of the dismissal of the first misconduct, he alleges that he was injured by being placed on a "food loaf" and movement restriction which prevented him from showering, shaving, or participating in his one hour of exercise for seven days. (Doc. No. 22 at 6.) While this appears to raise an Eighth Amendment claim, Grisby cannot now raise these claims for the first time in a brief in opposition. See Pa. ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1981) (providing that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Even if he asserted these claims in his complaint, they fail as a matter of law. While prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, Estelle v. Gamble, 429 U.S. 97, 104 (1978), prisoners have no constitutional right to be served a particular type of meal. Brown v. Sobina, Civ. No. 08-128E, 2009 WL 5173717, at *6 (W.D. Pa. Dec. 29, 2009). Additionally, the alleged showering, shaving, and out of cell exercise restriction for seven days fails to rise to the level of an Eighth Amendment violation. See Miller v. Trometter, Civ. No. 11-811, 2012 WL 5933015, at *10 (finding plaintiff's allegations that he was denied breakfast and lunch on six days, showers on twenty eight occasions during the months of September and October, and exercise thirty four times in September and October was insufficient to support an Eighth Amendment claim). Moreover, Grisby does not allege that the lack of exercise time threatened his health and, therefore, does not state a constitutional violation. Id.; see also Gattis v. Phelps, 344 F. App'x 801, 805 (3d Cir. 2009).

9

Grisby has not "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' " that refutes the defense that he has failed to properly exhaust this claim, see U.S. Bank, Nat. Ass'n v. Greenfield, Civ. No. 12-2125, 2014 WL 3908127, at *2 (M.D. Pa. Aug. 11, 2014), summary judgment will be entered in favor of McBeth as to all claims stemming from Grisby's misconduct charges.

**B.    Grisby's Grievance Exhaustion of Administrative Remedies**

As it relates to the resolution of inmate grievances, the DOC has similarly established a three-tiered system (pursuant to DC-ADM 804). The process consists of: (1) an initial review of a grievance filed with the Facility's Grievance Coordinator within fifteen (15) days from the date of the underlying incident; (2) an appeal to the Facility Manager of the institution or designee within fifteen (15) days of an adverse decision from the Facility's Grievance Coordinator; and (3) an appeal to the SOIGA within fifteen (15) days of the Facility Manager's adverse decision for a final review. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. Thus, an inmate's "grievances must contain the sort of information that the administrative system requires." Strong v. David, 297 F.3d

646, 649 (7th Cir. 2002). If a prison's regulations do not delineate the particular content a grievance must include, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (quoting Strong, 297 F.3d at 650).

While it "is beyond the power of t[he] court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis," the Third Circuit has recognized a narrowly-defined exception to the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). Specifically, where the actions of prison officials directly cause the procedural default, the inmate may not be held to strict compliance with the exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, an inmate's failure to exhaust will only be excused upon a showing from the inmate that "he was misled or that . . . some extraordinary reason . . . prevented [him] from complying with the statutory mandate." Warman, 49 F. App'x at 368. An allegation that the DOC policies were not clearly explained to the inmate, alone, does not excuse the inmate from properly exhausting his administrative remedies. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).

Grisby did not file a grievance regarding either Misconduct B479893 or Misconduct B479896.  Rather, he filed a grievance concerning an issue with a staff officer for mishandling his outgoing mail.  (Doc. No. 17, Ex. B Decl. Alvord ¶ 20.)  The grievance was denied by the Facility Grievance Coordinator.  (Id.)  Grisby appealed the initial response to the Facility Manager, and the denial was upheld.  (Id.)  Grisby did not appeal further to the SOIGA.  (Id.)  Between March 2, 2015 and his transfer out of SCI-Camp Hill, Grisby had filed two additional grievances regarding mail and food, but failed to appeal either of these grievances to SOIGA.  (Id. ¶ 22.)

While Grisby argues that these rules and procedures regarding exhaustion were confusing or not described with particularity, the Court finds this argument unavailing.  See, e.g. Casey, 71 F. App'x at 918 (An allegation that the DOC policies were not clearly explained to the inmate, alone, does not excuse the inmate from properly exhausting his administrative remedies).  Equally unavailing is Grisby's claim that he felt constrained to stop exhausting his administrative remedies because of interference by prison staff.  (Doc. No. 22 at 7.)  First, in support of this argument, Grisby attaches to his brief in opposition a number of grievances completely unrelated to, and that predate, the instant claims set forth in this action and against the instant Defendant.  (See Doc. No. 22 Exs. A-C).

Accordingly, because these exhibits are unrelated to Grisby's instant claims against McBeth in this action they have no relevancy to the disposition of this matter.

The only exhibit the Court finds relevant to this action is Grisby's "Exhibit D," which is a request for copies to the Business Office for, inter alia, the relevant Misconduct Number B479896. (Id. at 8, Ex. D, providing that Grisby provided the Business Office with a carbon copy of his appeal to the Facility Manager for a copy). Grisby argues that while the Business Office made the appropriate copies, prison officials intentionally intercepted these copies which prevented him from further appealing and exhausting his administrative remedies as to Misconduct Number B479896. (Id. at 8.) However, there is no evidence that Grisby's failure to receive a copy of the denial of his appeal to the Facility Manager regarding Misconduct Number B479896 from the Business Office prevented him from actually filing an appeal to the Chief Hearing Examiner. In other words, Grisby could have filed his appeal to the Chief Hearing Examiner, raising the issues that he set forth on appeal, and subsequently submit the copy of the Facility Manager's denial once he received it. However, it appears that Grisby chose not to file an appeal at all, thereby failing to exhaust his remedies. See Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after allegedly ceased efforts to impede end, prisoner failed to follow through on grievance).

13

These facts, coupled with the Courts finding that no "extraordinary reason . . . prevented [Grisby] from complying with the statutory mandate," Warman, 49 F. App'x at 368, and case law recognizing a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires," Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002), necessitates a conclusion that Grisby has failed to exhaust his administrative remedies. Consequently, because these claims are barred by the PLRA, summary judgment must be entered in favor of McBeth and against Grisby.

## IV. CONCLUSION

For the foregoing reasons, McBeth's motion to dismiss, or, in the alternative, for summary judgment (Doc. No. 16), will be granted. An appropriate Order follows.

    s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 28, 2018